# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TONEY A. WHITE

     Plaintiff

v.

RONALD OLIVER et al.,

     Defendants

Case No.: 2:23-cv-01121-APG-DJA

**Order Granting Defendants' Motion to Dismiss**

[ECF No. 45]

     Pro se plaintiff Toney A. White is an inmate in the custody of the Nevada Department of Corrections (NDOC) and is currently housed at High Desert State Prison (HDSP). White brings the following claims under 42 U.S.C. § 1983 against various NDOC-affiliated individuals arising from their alleged response to his hunger strike: (1) First Amendment retaliation, (2) Eighth Amendment deliberate indifference to serious medical needs, and (3) Eighth Amendment excessive force. White also brings a free speech claim under Article I, § 9 of the Nevada Constitution.

     The defendants move to dismiss his First Amendment retaliation claim and his co-extensive free speech claim under the Nevada Constitution, arguing that the claims are barred by claim preclusion. Alternatively, they contend that White has not alleged a retaliatory motive or the absence of a legitimate penological purpose. They also assert that they are entitled to qualified immunity on the federal retaliation claim, as well as Eleventh Amendment sovereign immunity for the state retaliation claim. White's opposition does not present any counterarguments. Instead, he states that he had no access to legal research materials. The defendants reply that because White has failed to dispute their motion, they are entitled to

dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They also argue that the fact that White has not requested any extensions or made a nominal argument in opposition "signals his apparent consent" to my granting their motion under Local Rule 7-2. ECF No. 51 at 3. I grant the defendants' motion because the defendants are entitled to qualified immunity on White's federal retaliation claim, and they are entitled to sovereign immunity on his state retaliation claim.

## I.    BACKGROUND

The parties are familiar with the facts, so I repeat them only as necessary to resolve the motion. White alleges that in April 2023, he and two other inmates initiated a hunger strike to protest HDSP living conditions. ECF No. 18 at 4. As prison officials "began to observe significant weight losses causing concern," at least four of them (Bean, Oliver, B. Williams, and J. Williams) "order[ed] [White's] infirmary housing for 'monitoring' over his . . . objections." *Id.* at 5. White communicated to various prison officials that he had the right to refuse treatment, and the officials responded that he would be forcibly moved to the infirmary if he did not willingly comply. *Id.* at 6. White noted one official, Ashcraft, "attempt[ed] to persuade him into cooperating . . . assuring him it was 'policy' to house in him in the infirmary on day 3 of a hunger strike . . . to protect [him]." *Id.* at 7 (simplified). After White refused transfer multiple times, several prison officials (B. Williams, J. Williams, Oliver, Bean, Barth, Sanchez, and Ashcraft) arrived at White's cell. *Id.* at 8. They observed nearby as the Correctional Emergency Response Team (CERT) (including Portillo, Pope, Pena, Perez, Kelly, Bancalari, and other unidentified individuals) forcibly removed White to the infirmary. *Id.* During the removal, White stopped, requested prison officers to walk slower on account of excessively tight restraints making it difficult to move, and refused to walk any further from pain, at which point the CERT

officials, "slammed [him] into a restraint chair on his healing right hand bone-break," bent his hand, kneed him in his groin area, placed him in excessively tight restraints on the chair, and "compress[ed] his left jaw and neck . . . until White was strapped into the restraint chair." *Id.* at 9. In the infirmary, he was in "24 hour daily confinement and with a completely inoperable emergency call button," along with other "adverse conditions," including no phone account access. *Id.* at 10-11. The restrictions on phone access "render[ed] him completely incapable of contacting family friends, agencies and the media . . . until May 11, 2023." *Id.* at 10. He alleges prison officials (Liang, Garcia) denied him medical care, both on the night of being forcibly removed from his cell and after he was discharged from the emergency room. *Id.* at 12-13. Other officials allegedly (including Rivas, Gutierrez, Barth, Ashcraft, Sanchez) denied his post-strike infirmary discharge care. *Id.* at 14.

Soon thereafter, White and two other plaintiffs filed suit in Nevada state court against various individuals and entities associated with NDOC.[1] ECF No. 45-1 at 2-3. The plaintiffs alleged, among other claims, First Amendment retaliation and a violation of Article I, § 9 of the Nevada Constitution based on the hunger strike incident. *Id.* at 2, 7-17, 23-24, 32. In July 2024, Judge Eric Johnson granted the defendants' motion to dismiss. ECF No. 45-2 at 2. He found, in part, that the plaintiffs failed to adequately allege First Amendment retaliation and a co-extensive Article I, § 9 violation because they did not show retaliatory motive or the absence of a legitimate correctional goal being advanced by the defendants' actions. *Id.* at 5-6. He also ruled that the defendants were entitled to qualified immunity for the First Amendment claim and

---

[1] As relevant here, named defendants in the state court lawsuit included: Gerardo Bancalari, Brian Williams, David Rivas, Gustavo Sanchez, James Dzurenda, Javier Garcia, Jeremy Bean, Juan Pena, Julie Williams, Manuel Portillo, Robert Ashcraft, Ronald Oliver, Benito Gutierrez, Jay Barth, Perez, Robert Liang, and J. Pope. ECF No. 45-1 at 4-6.

sovereign immunity for the co-extensive state claim. *Id.* at 6-9.  He dismissed the plaintiffs' First

Amendment and Article I, § 9 claims with prejudice, deeming amendment as futile. *Id.* at 9-10.

The next day, White and the two other plaintiffs from the state court action filed this suit in

federal court against various NDOC-affiliated individuals and entities. ECF No. 1-1.  I

subsequently dismissed the other two plaintiffs and ordered some of White's claims to proceed.

ECF Nos. 16 at 3-4; 19 at 17-18.

## II.    ANALYSIS

In considering a motion to dismiss under Rule 12(b)(6), I take all well-pleaded

allegations of material fact as true and interpret the allegations in a light most favorable to the

non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I

do not "assume the truth of legal conclusions merely because they are cast in the form of factual

allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  To

defeat a motion to dismiss, a plaintiff must make sufficient factual allegations to establish a

plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  Such allegations must amount to "more than labels and conclusions,

[or] a formulaic recitation of the elements of a cause of action." *Id.*

### A.  Qualified Immunity

In evaluating whether qualified immunity applies, I "must determine whether: (1) the

facts adduced constitute the violation of a constitutional right; and (2) the constitutional right was

clearly established at the time of the alleged violation." *Daniels Sharpsmart, Inc. v. Smith*, 889

F.3d 608, 617 (9th Cir. 2018) (quotation omitted).  I may answer these two questions in any

order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  White bears the burden of showing the right at issue was clearly established. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) (quotation omitted).  White does not necessarily need to point to a case directly on point, but existing caselaw "must place the lawfulness of the particular action beyond debate." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (simplified).  Furthermore, I must define the right "at the appropriate level of specificity, and not at a high level of generality," before determining if it was clearly established. *Id.* at 968-69 (simplified).  Qualified immunity applies only to White's federal claims. *See Mack v. Williams*, 522 P.3d 434, 451 (Nev. 2022) (en banc) ("[Q]ualified immunity, as that doctrine is understood under federal law, is not a defense available to state actors sued for violations of the individual rights enumerated in Nevada's Constitution").

Because White did not respond, he did not meet his burden of providing case law clearly establishing that the defendants' actions violated the First Amendment. Thus, even if White plausibly alleged a First Amendment retaliation claim based on the defendants' actions, he has failed to meet his burden of showing his rights were clearly established.  The defendants are therefore entitled to qualified immunity, and I grant the defendants' motion to dismiss White's federal First Amendment retaliation claim.

**B.  Eleventh Amendment Sovereign Immunity**

The defendants also argue that they are entitled to sovereign immunity for White's state retaliation claim.  Because White did not respond, he does not dispute the point.

Under Nevada Revised Statutes (NRS) § 41.0337, any state tort action brought against state employees must name the State of Nevada (or the appropriate political subdivision), which generally waives the state's sovereign immunity in state court under NRS § 41.031 as long it is named as a party.  However, the State of Nevada and arms of the state generally cannot be sued in federal court without its consent. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment . . . .  The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states").  Additionally, 28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims. *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133-34 (9th Cir. 2006).

Here, White seeks damages against various NDOC defendants for a violation of Article I, § 9 of the Nevada Constitution.  This is a tort action based on state law, and he is thus required to name the state or its agency as a party under NRS §§ 41.0337 and 41.031.  However, the State of Nevada has not consented to be sued in this action, and I previously dismissed it and the Nevada Board of Commissioners from this action with prejudice. ECF No. 19 at 14-15, 17.  Because White cannot name the state or its agencies as parties, White's state retaliation claim is barred by sovereign immunity, and he must bring it in state court.  I therefore grant the defendants' motion to dismiss.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**III.    CONCLUSION**

I THEREFORE ORDER that the defendants' motion to dismiss plaintiff Toney A. White's claims for First Amendment retaliation and free speech violations under Article I, § 9 of the Nevada Constitution **(ECF No. 45) is GRANTED.**  White's Eighth Amendment claims for indifference to serious medical need and excessive force will proceed.

DATED this 27th day of March, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE